## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made and entered into this _____ day of _____ , 2021 ("Effective Date"), by and among Joshua Carin ("Debtor" or "Carin") and Moira Geronimo-Carin ("Moira Carin") (collectively the "Carins") and Geppetto Catering Company, Inc., a Maryland corporation ("Geppetto") and Charles M. Lenkin ("Lenkin") (collectively the "Plaintiffs").  Debtor, Moira Carin, Geppetto and Lenkin are sometimes hereinafter referred to individually as a "Party" and collectively as the "Parties".

## RECITALS

A.    Debtor is a former officer, director, employee and stockholder of Geppetto.  He was in charge of Geppetto's day to day business and affairs for more than 25 years prior to his voluntary resignation from all such positions on July 3, 2020.  Contemporaneously with his resignation, Debtor relinquished all of his right, title and interest in and to Geppetto and surrendered his 30% interest therein to Lenkin.

B.    Lenkin currently is the sole officer, director, shareholder and employee of Geppetto.

C.    Debtor and Lenkin are parties to a certain Stockholder Agreement between Debtor, Lenkin and Geppetto dated January 20, 2004 ("Stockholder Agreement").  The Stockholder Agreement contains a non-competition clause and a dispute resolution provision requiring Debtor and Lenkin to submit any disputes between them arising thereunder to binding arbitration.

D.    In or about July 2020 disputes arose between Geppetto, Lenkin and the Debtor which culminated in Plaintiffs' filing an arbitration demand upon the Debtor on September 15, 2020, as amended December 22, 2020, before the American Arbitration Association, AAA Case No. 01-20-0014-8697, ("Arbitration Claim").

E.    The Arbitration Claim sought an award of damages against the Debtor, alleging that he breached the non-competition clause contained in the Stockholder Agreement; breached his fiduciary duty and duty of loyalty to Geppetto; and engaged in theft, conversion and fraud.  The Debtor filed an Answering Statement on September 30, 2020 and an Answer to Amended Claim on December 29, 2020 denying the allegations contained in the Arbitration Claim.

F.    Among other things, the Arbitration Claim alleged that Carin's breach of the Stockholder Agreement and other wrongful conduct arose out of and were related to his contractual and employment relationships with, and other activities involving, the Montgomery County Revenue Authority ("MCRA") and its CEO, Keith Miller ("Miller").

G.    On April 13, 2021, prior to completion of discovery in the arbitration proceedings, the Debtor filed a voluntary chapter 7 bankruptcy petition, Case No. 21-12418-MCR ("Bankruptcy Case") in the U.S. Bankruptcy Court for the District of Maryland (Greenbelt Division) ("Bankruptcy Court") thereby staying the Arbitration Claim.

H.    Among the scheduled assets of the Debtor's bankruptcy estate is a 30% membership interest in Queensbury, L.L.C. a Maryland limited liability company, titled in the name of the Debtor and his wife, and Moira-Geronimo Carin, as tenants by the entireties ("Queensbury Membership Interest").  The Debtor valued the Queensbury Membership Interest at $300,000 in bankruptcy Schedule A/B: Property.   The Debtor claimed the Queensbury Membership Interest exempt from creditors in his bankruptcy Schedule C.

I.    On August 18, 2021, Plaintiffs filed in the Bankruptcy Court a Complaint for (I) Determination of Non-Dischargeability of Debt; (II) Allowance of Claims and Other Relief Against Debtor, Montgomery County Revenue Authority, Keith Miller, Eric Goldberg and Moira Geronimo-Carin; and (III) Granting of Other Relief, Adv. Proc. No. 21-00179 ("Adversary Proceeding").  Defendants MCRA, Miller and Eric Goldberg are hereinafter referred to as the "Remaining Adversary Defendants".

J.    In the Adversary Proceeding the Plaintiffs assert against the Debtor claims for breach of fiduciary duty and duty of loyalty, fraud, embezzlement, fraudulent misappropriation by a fiduciary, conversion and conspiracy to commit the foregoing torts.  The Adversary Proceeding further asserts against Moira Carin claims for civil conspiracy to commit fraud, aiding and abetting fraud, unjust enrichment, conspiracy to convert Geppetto's property, and conspiracy to commit fraud and embezzlement.  The Carins dispute such claims.

K.    The Adversary Proceeding also seeks an Order determining that Plaintiffs' claims against Debtor are not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and/or (a)(6).

L.    On September 3, 2021, Geppetto filed in the Bankruptcy Court a proof of claim docketed as Claim #7-1 asserting a general unsecured claim in the amount of $5,500,000 ("Geppetto Proof of Claim").  On September 3, 2021, Lenkin filed in the Bankruptcy Court a proof of claim docketed as Claim #8-1 asserting a general unsecured claim in the amount of $5,500,000 ("Lenkin Proof of Claim").  The Plaintiffs intend to amend and consolidate the Geppetto Proof of Claim and the Lenkin Proof of Claim into one single proof of claim asserting a nonpriority general unsecured claim in the amount of $5,500,000.

M.    In order to avoid the costs and risks associated with further litigation, the Parties desire to resolve all disputes between and among them arising prior to the date of this Agreement, including without limitation, the disputes alleged in, or relating to, the Arbitration Claim and the Adversary Proceeding.

NOW, THEREFORE, in consideration of the foregoing premises and of the mutual promises and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## **AGREEMENT**

1.        Recitals.  The foregoing Recitals are hereby incorporated by reference.

2.        Bankruptcy Court Approval Contingency.

        (a)        This Agreement and the Parties' respective obligations hereunder are contingent upon the entry of a final and non-appealable order of the Bankruptcy Court pursuant to Fed.R.Bankr.P. 9019 approving and effectuating all of the terms and provisions of this Agreement, including specifically and without limitation, the provisions contained in Section 5 hereof ("Final Order"), on or before the date which falls ninety (90) days following the Effective Date ("Contingency Expiration Date"); provided that the Contingency Expiration Date may be extended at any time or from time to time by mutual written agreement executed by the Parties.  If a Final Order is not entered on or before the Contingency Expiration Date, any Party shall have the right to terminate this Agreement upon written notice to the other Parties at any time during the period commencing on the day immediately following the Contingency Expiration Date and expiring on the date that a Final Order is entered.

        (b)        Within ten (10) business days following the date of full execution of this Agreement, the Debtor will file a motion with the Bankruptcy Court pursuant to Fed.R.Bankr.P. 9019, in form and substance consented to by the Plaintiffs, seeking approval of this Agreement. Such motion will include (i) a proposed consent order to be entered in the Bankruptcy Case in the form of Exhibit 1 effectuating the terms and provisions of this Agreement and (ii) a proposed consent order to be entered in the Adversary Proceeding in the form of Exhibit 2 effectuating the terms and provisions of this Agreement.

3.        Assignment and Transfer of Queensbury Membership Interest.  Within five (5) business days following the date of entry of a Final Order, the Carins shall (i) assign all of their right, title and interest in and to the Queensbury Membership Interest to Lenkin and his wife, Renee Lenkin, as tenants by the entireties, and (ii) effectuate such assignment by executing and delivering to Lenkin a Second Amendment to Limited Liability Company Operating Agreement of Queensbury, L.L.C. in the form attached as Exhibit 3 ("Queensbury Assignment").

4.        Settlement Payment.  Within ten (10) days following the date of entry of a Final Order, the Debtor shall pay to Geppetto in cash or immediately available funds, the sum of $500,000 ("Settlement Payment").  Debtor hereby represents and warrants that the Settlement Payment will be funded solely by non-assets of the Debtor's bankruptcy estate and/or assets held to be exempt.  In addition to, and without limitation of, the further terms and provisions contained in this Agreement, the Parties acknowledge and agree that the Debtor's representation and warranty contained in the immediately preceding sentence is a material inducement for Plaintiffs to enter into this Agreement.

5.        Non-dischargeability; Allowance and Reduction of Proofs of Claim.

        (a)        Contingency. This Agreement shall be contingent upon the final and non-appealable approval and effectuation of the following terms and conditions:

3

(i)     The Geppetto Proof of Claim and the Lenkin Proof of Claim shall be treated as one consolidated claim and such consolidated claim shall be held to be non-dischargeable pursuant to §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6) of the Bankruptcy Code and allowed for all purposes of the Bankruptcy Case as a general unsecured claim, not subject to setoff or recoupment, in the amount of $5,500,000 (the "Allowed Amended Proof of Claim"); and

(ii)    Subject to the timely receipt of the Settlement Payment and the fully executed Queensbury Assignment, and conditioned on there being no Default as defined in Section 7(a) hereof, the Allowed Amended Proof of Claim shall be reduced by $800,000 to $4,700,000.

(b)     Cooperation.  Neither the Debtor nor Moira Carin will object to the Geppetto Proof of Claim, the Lenkin Proof of Claim, or the contemplated subsequent Allowed Amended Proof of Claim.  In the event that any third party files any objection to the Geppetto Proof of Claim, the Lenkin Proof of Claim or the Allowed Amended Proof of Claim pursuant to §502(b) of the Bankruptcy Code, the Debtor and Moira Carin shall cooperate with the Plaintiffs with respect to Plaintiffs' response, if any, to such objection, including any relief or resolution that might be sought by the Plaintiffs in response to such objection.  The Parties shall bear their respective counsel fees and costs incurred with respect to such cooperation.  Plaintiffs acknowledge and agree that except for the Queensbury Membership Interest, they have no desire or intention to acquire any of the Debtor's tangible personal property currently scheduled by the Debtor in the Bankruptcy Case and shall not, directly or indirectly, seek to acquire any such personal property.

6.      Release of Debtor and Moira Carin.

(a)     Conditional Releases.

(i)     Debtor.  Upon the entry of a Final Order as defined in Section 2(a) hereof and conditioned on there being no Default as defined in Section 7(a) hereof, Plaintiffs hereby agree to forever forbear and refrain from seeking any form of relief or recovery from or against the Debtor from any and all manner of actions, causes of action, suits, obligations, debts, demands, accounts, claims, liabilities and losses arising prior to the date of full execution of this Agreement (collectively "Plaintiffs' Claims Against Debtor"), whether known or unknown, contingent or matured, direct or indirect, in law or in equity, including without limitation, Plaintiffs' Claims Against Debtor by reason of, or relating in any way whatsoever to, the Arbitration Claim and/or the Adversary Proceeding.

(ii)    Moira Carin.  Upon the entry of a Final Order as defined in Section 2(a) hereof, and conditioned on there being no Default as defined in Section 7(a) hereof, Plaintiffs hereby agree to release, acquit and forever discharge Moira Carin from any and all manner of actions, causes of action, suits, obligations, debts, demands, accounts, claims, liabilities and losses arising prior to the date of full execution of this Agreement (collectively "Plaintiffs' Claims Against Moira Carin"), whether known or unknown, contingent or matured, direct or indirect, in law or in equity, including without limitation, Plaintiffs' Claims Against Moira Carin by reason of, or relating in any way whatsoever to, the Adversary Proceeding.

(b)     <u>Dismissal of Plaintiffs' Claims Against Moira Carin</u>.  Upon entry of a Final Order as defined in <u>Section 2(a)</u> hereof, and conditioned on there being no Default as defined in <u>Section 7(a)</u>, Plaintiffs agree (i) to dismiss with prejudice all of their counts against Moira Carin in the Adversary Proceeding; and (ii) not to name Moira Carin as a party in any non-bankruptcy litigation against the Remaining Adversary Defendants.

(c)     <u>No Other Waiver or Release</u>.  The foregoing conditional releases set forth in <u>Section 6(a)</u> hereof shall not be deemed to constitute a waiver, release, modification or relinquishment of any claims, losses or demands that the Plaintiffs ever had, now have, shall or may have in the future, against or with respect to any person or entity other than the Debtor and Moira Carin.  Plaintiffs hereby expressly reserve all rights and claims that they had, now have, shall or may have against or with respect to any such third party, and the Debtor and Moira Carin hereby agree not to dispute or object to any such claims by the Plaintiffs against any such third party.  For the avoidance of doubt, nothing contained in this Agreement shall be deemed to constitute a waiver, release, modification or relinquishment of any claims, actions, losses or demands that the Plaintiffs ever had, now have, shall or may have in the future against any of the Remaining Adversary Defendants or their related entities or their respective predecessors in interest, successors, shareholders, members, directors, officers, employees, agents, attorneys and assigns.

7.     <u>Default</u>.

(a)     <u>"Default" Defined</u>.  Each of the following shall constitute a default hereunder ("<u>Default</u>"):

(i)     <u>Material Breach of Performance Obligations</u>:  material breach or failure by the Debtor or Moira Carin to timely perform any of his or her respective obligations under this Agreement and such failure is not fully cured at the defaulting Party's sole expense to the reasonable satisfaction of the Plaintiffs within five (5) business days following notice thereof to the defaulting Party ("<u>Material Breach</u>");

(ii)     <u>Material Breach of Representations or Warranties</u>:  material breach of any of the respective representations, warranties or covenants made herein by the Debtor or Moira Carin;

(iii)     <u>Moira Bankruptcy; Avoidance or Set-Aside</u>:  Both of the following events occur:

(A)  Within ninety-one (91) days following the last to occur of the receipt by the Plaintiffs of the Settlement Payment and the Queensbury Assignment, Moira Carin files a petition for bankruptcy under any chapter of the U.S. Bankruptcy Code or takes advantage of any other debtor relief law; or Moira Carin is the subject of an involuntary petition for bankruptcy under any chapter of the U.S. Bankruptcy Code, which involuntary petition is not dismissed within a period of thirty (30) days after its filing ("<u>Moira Bankruptcy</u>"); and

(B) the Moira Bankruptcy results in the avoidance or set aside of the Settlement Payment or the Queensbury Assignment pursuant to an order of any court of competent jurisdiction; or

(iv)    Avoidance or Set-Aside of Settlement Payment or Queensbury Assignment Generally:  the avoidance or set-aside of the Settlement Payment or the Queensbury Assignment (other than resulting from a Moira Bankruptcy) pursuant to an order of any court of competent jurisdiction.

(b)    Notification of Default.  If any Party becomes aware of a Default under Section 7(a)(iii) or 7(a)(iv), it shall promptly notify the other Parties of such Default in accordance with the notice provisions of this Agreement.  Failure to give such notice shall not be deemed to affect, modify, or waive any provision of this Agreement.

(c)    Remedies Upon Default.  In addition to, and without limitation of, such other and further rights and remedies to which the Plaintiffs may be entitled hereunder or pursuant to applicable law, all of such rights and remedies being hereby expressly reserved by Plaintiffs, in the event of any Default, the Plaintiffs may elect by written notice to the Defaulting Party within fifteen (15) days following the Default, and without the necessity of any further notice or demand, to declare the conditional releases set forth in Section 6(a)(i) and 6(a)(ii) of this Agreement to be null and void.  Any such declaration shall be self-operative. The Parties expressly agree that in the event the Plaintiffs elect to exercise or pursue any such rights or remedies provided for in this Section 7(c) or under applicable law, the remaining terms and provisions contained in this Agreement shall continue and remain unmodified and in full force and effect.

8.    Release of Plaintiffs.  Except for the Plaintiffs' respective obligations, covenants, warranties and representations contained in this Agreement, the Debtor, Moira Carin and all persons (other than the trustee in the Bankruptcy Case) and entities who could claim by or through them, including without limitation all entities owned or controlled, directly or indirectly, by either of them, hereby release, acquit and forever discharge the Plaintiffs and their officers, directors, shareholders, agents, representatives, affiliates and attorneys from any and all manner of actions, causes of action, suits, obligations, debts, demands, accounts, claims, liabilities and losses arising prior to the date of full execution of this Agreement (collectively "Carin Claims"), whether known or unknown, contingent or matured, direct or indirect, in law or in equity, including without limitation, Carin Claims by reason of, or relating in any way whatsoever to, the Arbitration Claim and/or the Adversary Proceeding.

9.    Debtor as Nominal Party.

(a)    The Parties acknowledge that notwithstanding the Parties' settlement of the Plaintiffs' claims against the Debtor in the Arbitration Claim and the Plaintiffs' claims against the Carins in the Adversary Proceeding, the Plaintiffs intend to continue, and reserve all rights to pursue, the Plaintiffs' claims against the Remaining Adversary Defendants and possibly others, in the Adversary Proceeding or in another court of competent jurisdiction.  Therefore, the Parties agree that the Plaintiffs shall have the right to litigate the Debtor's liability and the Debtor agrees to remain as a nominal party or defendant in the Adversary Proceeding and/or be joined or added

as a nominal party or defendant in proceedings before another court of competent jurisdiction for such purposes.  Debtor agrees to bear the expense of any attorneys' fees he may incur in such proceedings.

(b)    Debtor agrees at no cost to Plaintiffs to cooperate with the Plaintiffs' requests for documents and information in any such litigation and Debtor shall respond to any such requests as promptly as reasonably possible.  Notwithstanding anything to the contrary contained herein, Debtor's breach of his obligations under this Section 9(b) shall not constitute a Material Breach as defined in Section 7(a)(i) hereof.

(c)    Nothing in this Agreement is intended to, nor shall it be deemed to release, relinquish, waive, estop, abridge, settle, modify or determine, in whole or in part, any claims or losses (known or unknown) that the Plaintiffs had, now have or shall or may have in the future against or with respect to, any person or entity other than the Debtor and Moira Carin; and the Plaintiffs hereby expressly reserve their right to pursue any such claims and to seek recovery of any such losses and to seek any other form of relief arising out of or relating thereto.

(d)    If any court of competent jurisdiction requests or requires a lifting of the automatic stay in order for Plaintiffs to add or include the Debtor as a nominal party or defendant in proceedings before such court (including without limitation any issuance of summons or subpoenas upon the Debtor in such proceedings) the Parties agree that they will cooperate with each other to effectuate the terms and provisions of this Section 9, including without limitation, the Debtor and, if applicable, Moira Carin, consenting to (i) Plaintiffs' seeking relief from the automatic stay for such purpose, or in the alternative, (ii) Plaintiffs' seeking an order that it shall not be a deemed a violation of the automatic stay for the Debtor to be added or included as a nominal party or defendant in such proceedings.  Each Party shall bear the cost of its counsel fees incurred with respect to such cooperation.

10.    Amendment of Stockholder Agreement.  Notwithstanding anything to the contrary contained in the Stockholder Agreement, the Plaintiffs and the Debtor hereby agree that they no longer desire to resolve any past, present or future disputes among them through arbitration.  Accordingly, the Plaintiffs and the Debtor hereby mutually agree that the dispute resolution provisions contained in Section 10 of the Stockholder Agreement be and are hereby deleted in their entirety.  The Plaintiffs and the Debtor agree to execute and deliver, at no cost to any other Party, such other and further documents and agreements as may be reasonably requested by any other Party in order to effectuate the terms and provisions of this Section 10.  The Plaintiffs and the Debtor further agree that the Plaintiffs may in their sole discretion at any time, as an administrative matter only, notify the American Arbitration Association that the Arbitration Claim will no longer be pursued and the Debtor hereby consents to the transmittal or filing of any such notification by the Plaintiffs.

11.    Notice.  All notices given or required under this Agreement shall be in writing and deemed to be properly served if sent by email with electronic proof of delivery; certified mail, return receipt requested; or by reputable overnight courier service to the intended recipient at its address for notices set forth below, or to any subsequent address which any Party shall designate by notice provided to the other Parties in accordance with this Section.  The date of service of

notice shall be (i) the next business day after notice was sent in the case of delivery by email or overnight courier, or (ii) three (3) business days after mailing the notice in the case of certified mail.

<u>If to Debtor or Moira Carin</u>:

Joshua Carin
17523 Moore Road
Boyds, MD 20841
Email: joshcarin1998@gmail.com

With a copy to:

Alan D. Eisler, Esq.
Eisler Hamilton, LLC
1 Research Ct. #450
Rockville, MD 20850
Email: aeisler@e-hlegal.com

<u>If to Plaintiffs</u>:

Charles Lenkin
18605 Bucklodge Road
Boyds, MD 20841
Email: chuckers96@gmail.com

<u>With a copy to</u>:

Jonathan Greenbaum, Esq.
Coburn & Greenbaum, LLC
Second Floor
1710 Rhode Island Ave., N.W.
Washington, DC 20036
Email: jg@coburngreenbaum.com

12.    <u>Time is of the Essence</u>. TIME IS OF THE ESSENCE OF EACH AND EVERY PROVISION OF THIS AGREEMENT.

13.    <u>No Assignment</u>.  The Parties represent and warrant that they each own and have not assigned or otherwise transferred to any other person or entity such Party's rights and claims as are being altered or otherwise affected by this Agreement and that to the best of its knowledge, information and belief, each is the sole party-in-interest with regard to such respective rights and claims.

14.    <u>Compromise and Settlement of Disputed Claims</u>.  This Agreement constitutes the settlement and compromise of disputed claims.  Neither the existence of this Agreement nor any

of its terms or provisions shall constitute or be construed as an admission of any liability, fault or measure of damages suffered by any Party; provided however that in no event shall this Section 14 be deemed to abrogate, modify, supersede, waive, relinquish or contravene any other term or provision of this Agreement or the validity or enforceability thereof. In the event of any conflict or inconsistency between this Section 14 and the remaining terms and provisions of this Agreement, the remaining terms and provisions hereof shall govern and control. The Parties further acknowledge and agree that the dollar amount of the reduction of the Geppetto Proof of Claim and the Lenkin Proof of Claim set forth in Section 5(a)(ii) hereof is a negotiated amount and may not be used by any third party for evidentiary purposes in litigation.

15.     Authority. Each of the Parties represents and warrants that its execution and delivery of this Agreement has been duly authorized by all necessary corporate, partnership, agency, and individual actions as the case may be on behalf of such Party and that its execution and delivery of this Agreement shall bind such Party to the terms and provisions of this Agreement.

16.     Further Assurances. Each of the Parties agrees to execute and deliver any and all documents, and to take any other action, at no cost to the other Parties, that may be necessary and appropriate to carry out and effectuate the express terms and intent of this Agreement.

17.     No Reliance on Representations of Other Parties; Advice of Legal Counsel. The Parties represent and acknowledge that, in executing this Agreement, they do not rely and have not relied upon any representation or statement made by any other Party or any of such other Party's agents, shareholders, members, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as specifically stated in this Agreement. The Parties further declare that, in making and entering into this Agreement, they rely entirely upon their own judgment, beliefs and interest and the advice of their respective legal counsel (for whose expense each shall be solely responsible) and that they have had a reasonable period of time to consider this Agreement. The Parties agree that each Party and its respective legal counsel have reviewed this Agreement and that each fully understands and voluntarily accepts all of the provisions contained in this Agreement. The Parties further agree that this Agreement is the product of negotiations between the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement.

18.     Severability. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties. If any provision of this Agreement is declared or determined by any court of competent jurisdiction to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining parts, terms or provisions shall not be affected thereby, and the illegal, unenforceable or invalid part, term or provision shall be deemed not to be a part of this Agreement.

19.     Section Headings. The section and subsection headings in this Agreement are for convenience only and shall not enlarge or limit the scope or meaning of the various and several sections and subsections hereof. Words of any gender used in this Agreement shall include any other gender, and words in singular number shall be held to include the plural, unless the context otherwise requires. The terms "including" and "include" shall mean in all cases "including without limitation".

20.    <u>Entire Agreement</u>.  This Agreement contains the entire agreement between the Parties and supersedes any and all prior agreements and understandings, written or oral, between the Parties.

21.    <u>Modification</u>.  No modification of this Agreement shall be binding or enforceable unless in writing, signed by all of the Parties and approved by the Bankruptcy Court.

22.    <u>Binding Effect</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, successors, administrators and assigns, including but not limited to, the chapter 7 trustee and any successor trustee in the Bankruptcy Case.

23.    <u>Governing Law; Jurisdiction; Enforcement</u>.  This Agreement shall be interpreted and construed in accordance with the laws of the state of Maryland, without regard to conflicts of laws principles. The Parties hereby irrevocably consent to the jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Agreement.  The prevailing Party in any such action shall be entitled to recover its reasonable attorneys' fees incurred therein.

24.    <u>Waiver of Right to Jury Trial</u>.  Each of the Parties agrees that any suit, action or proceeding, whether claim or counterclaim, brought or instituted by it or by any of its successors or assigns, solely for the purpose of enforcing any of the terms or provisions of this Agreement shall be tried by a court and not by a jury.  EACH OF THE PARTIES TO THIS AGREEMENT EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING.

25.    <u>Definition of "Effective Date"</u>. The Effective Date of this Agreement shall be the later among all of the dates upon which the Parties have executed this Agreement as set forth below their respective signatures.  The last of such Parties to execute this Agreement shall fill in the Effective Date in the first paragraph of this Agreement.

26.    <u>Counterparts</u>.  This Agreement may be executed in one or more electronically executed counterparts or by facsimile, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have each approved and executed this Agreement as of the date first above written which shall be the date of execution by the last Party to execute this Agreement as indicated below.


_____          _____
Joshua Carin                                              Moira Geronimo-Carin

Date: _____          Date: _____


_____
Charles M. Lenkin

Date: _____

GEPPETTO CATERING COMPANY, INC.
a Maryland corporation

By: _____
        Charles M. Lenkin
        President

Date: _____

EXHIBIT 1

FORM OF CONSENT ORDER
[BANKRUPTCY CASE]

[ATTACHED]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | |
|---|---|
| In re: | ) |
| | ) |
| JOSHUA CARIN | )          Case No. 21-12418-MCR |
| | ) |
| Debtor. | ) |
| _____ | ) |

## CONSENT ORDER APPROVING PARTIAL SETTLEMENT OF ADVERSARY PROCEEDING

UPON CONSIDERATION of Defendants,  Joshua Carin ("**Debtor**") and Moira Geronimo-Carin's ("**Moira Carin**") (collectively the "**Carins**") Motion to Approve Partial Settlement of Adversary Proceeding ("**Motion**");

IT APPEARING that the Debtor is a former officer, director, employee and stockholder of Plaintiff, Geppetto Catering Company, Inc. ("**Geppetto**"); and

IT FURTHER APPEARING that the Debtor was in charge of Geppetto's day-to-day business and affairs for more than 25 years prior to his voluntary resignation from all such positions on July 3, 2020; and

IT FURTHER APPEARING that contemporaneously with his resignation, Debtor relinquished all of his right, title and interest in and to Geppetto and surrendered his 30% interest therein to Plaintiff, Charles M. Lenkin ("**Lenkin**"); and

IT FURTHER APPEARING that Lenkin currently is the sole officer, director, shareholder and employee of Geppetto; and

IT FURTHER APPEARING that Debtor and Lenkin are parties to a certain Stockholder Agreement between Debtor, Lenkin and Geppetto dated January 20, 2004 ("**Stockholder Agreement**"); and

IT FURTHER APPEARING that the Stockholder Agreement contains a non-competition clause and a dispute resolution provision requiring Debtor and Lenkin to submit any disputes between them arising thereunder to binding arbitration; and

IT FURTHER APPEARING that in or about July 2020 disputes arose among Geppetto, Lenkin and the Debtor which culminated in Geppetto and Lenkin (collectively "**Plaintiffs**") filing an arbitration demand upon the Debtor on September 15, 2020, as amended December 22, 2020, before the American Arbitration Association, AAA Case No. 01-20-0014-8697, ("**Arbitration Claim**"); and

IT FURTHER APPEARING that the Arbitration Claim sought an award of damages against the Debtor, alleging that he breached the non-competition clause contained in the Stockholder Agreement; breached his fiduciary duty and duty of loyalty to Geppetto; and engaged in theft, conversion and fraud; and

IT FURTHER APPEARING that the Debtor filed an Answering Statement on September 30, 2020, and an Answer to Amended Claim on December 29, 2020, denying the allegations contained in the Arbitration Claim; and

IT FURTHER APPEARING that among other things, the Arbitration Claim alleged that the Debtor's breach of the Stockholder Agreement and other wrongful conduct arose out of, and were related to, his contractual and employment relationships with, and other activities involving, the Montgomery County Revenue Authority and its CEO, Keith Miller; and

IT FURTHER APPEARING that on April 13, 2021, prior to completion of discovery in the arbitration proceedings, the Debtor filed a voluntary chapter 7 bankruptcy petition, Case No. 21-12418-MCR ("**Bankruptcy Case**") in this Court, thereby staying the Arbitration Claim; and

IT FURTHER APPEARING that among the scheduled assets of the Debtor's bankruptcy estate is a 30% membership interest in Queensbury, L.L.C. a Maryland limited liability company, titled in the name of the Debtor and his wife, and Moira Geronimo-Carin, as tenants by the entireties ("**Queensbury Membership Interest**"); and

IT FURTHER APPEARING that the Debtor valued the Queensbury Membership Interest at $300,000 in bankruptcy Schedule A/B: Property; and

IT FURTHER APPEARING that the Debtor claimed the Queensbury Membership Interest exempt from creditors in his bankruptcy Schedule C; and

IT FURTHER APPEARING that on August 18, 2021, Plaintiffs filed in the Bankruptcy Court a Complaint for (I) Determination of Non-Dischargeability of Debt; (II) Allowance of Claims and Other Relief Against Debtor, Montgomery County Revenue Authority, Keith Miller, Eric Goldberg and Moira Geronimo-Carin; and (III) Granting of Other Relief, Adv. Proc. No. 21-00179 ("**Adversary Proceeding**"); and

IT FURTHER APPEARING that in the Adversary Proceeding the Plaintiffs assert against the Debtor claims for breach of fiduciary duty and duty of loyalty, fraud, embezzlement, fraudulent misappropriation by a fiduciary, conversion and conspiracy to commit the foregoing torts; and

IT FURTHER APPEARING that the Adversary Proceeding further asserts against Moira Carin claims for civil conspiracy to commit fraud, aiding and abetting fraud, unjust enrichment, conspiracy to convert Geppetto's property, and conspiracy to commit fraud and embezzlement; and

IT FURTHER APPEARING that the Carins dispute such claims; and

IT FURTHER APPEARING that the Adversary Proceeding also seeks an order determining that Plaintiffs' claims against Debtor are not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and/or (a)(6); and

IT FURTHER APPEARING that on September 3, 2021, Geppetto filed in the Bankruptcy Court a proof of claim docketed as Claim #7-1 asserting a general unsecured claim in the amount of $5,500,000 ("**Geppetto Proof of Claim**"); and

IT FURTHER APPEARING that on September 3, 2021, Lenkin filed in the Bankruptcy Court a proof of claim docketed as Claim #8-1 asserting a general unsecured claim in the amount of $5,500,000 ("**Lenkin Proof of Claim**"); and

IT FURTHER APPEARING that the Plaintiffs intend to consolidate the Geppetto Proof of Claim and the Lenkin Proof of Claim into one single proof of claim asserting a nonpriority general unsecured claim in the amount of $5,500,000; and

IT FURTHER APPEARING that in order to avoid the costs and risks associated with further litigation, the Carins and Plaintiffs desire to resolve all disputes between and among them arising prior to the date of the Agreement (defined below), including without limitation, the disputes alleged in, or relating to, the Arbitration Claim and the Adversary Proceeding; and

IT FURTHER APPEARING that on or about November 15, 2021, subject to Bankruptcy Court approval, the Carins and  Plaintiffs entered into the Settlement Agreement and Mutual Release ("**Agreement**"); and

IT FURTHER APPEARING that notice of the Agreement was provided to creditors and parties in interest, including the Office of the U.S. Trustee pursuant to Fed. R. Bankr. P. 9019, 2002, and 7041; and

IT FURTHER APPEARING that cause exists to approve the Agreement; it is hereby

4

ORDERED that the Motion is granted; and it is further

ORDERED that the Agreement is approved; and it is further

ORDERED that, subject to the terms of the Agreement, the Plaintiffs have an allowed, single, joint, unsecured nonpriority claim in the amount of $5,500,000, which claim shall not be subject to setoff and shall be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6); and it is further

ORDERED that within five days of this order becoming a final order and the Carins satisfying their respective obligations pursuant to Section 3 and Section 4 of the Agreement without any Default as defined in the Agreement, the Plaintiffs will file a notice of voluntary dismissal of all counts of the Adversary Proceeding against Moira Carin; and it is further

ORDERED that the Carins and Plaintiffs are authorized to take all action necessary to effectuate the terms of the Agreement.

SEEN AND CONSENTED TO:

EISLER HAMILTON, LLC


By: __/s/____ Alan D. Eisler
      Alan D. Eisler, Bar No. 11524
      1 Research Court, Suite 450
      Rockville, MD  20850
      Phone: (240) 283-1164
      Fax: (301) 519-8005
      Email: aeisler@e-hlegal.com
      Attorneys for Carins

COBURN & GREENBAUM, PLLC


By:   /s/  Jonathan W. Greenbaum
    Jonathan W. Greenbaum, Bar No. 24144
    1710 Rhode Island Avenue, N.W.
    Washington, D.C. 20036
    Phone: (202) 744-5003
    Fax: (866) 561-9712
    Email: jg@coburngreenbaum.com
    Attorneys for Geppetto and Lenkin

## CERTIFICATION OF CONSENT

      I HEREBY CERTIFY that the terms of the copy of the consent order submitted to the court are identical to those set forth in the original consent order, and the signatures represented by the /s/ _____ on the copy of the consent order submitted to the court reference the signatures of the consenting parties obtained on the original consent order.

                                /s/   Alan D. Eisler
                               Alan D. Eisler

Copies to:

Alan D. Eisler
Eisler Hamilton, LLC
1 Research Court, Suite 450
Rockville, MD  20850

Jonathan Greenbaum
Coburn & Greenbaum, PLLC
1710 Rhode Island Avenue, N.W.
Washington, D.C. 20036

Lawrence A. Katz
Hirschler Fleischer, PC
8270 Greensboro Drive, Suite 700
Tysons, VA 22012

Matthew H. Johnson
Office of the County Attorney
101 Monroe Street, 3rd Floor
Rockville, MD 20850

Diane Elizabeth Feuerherd
Miller, Miller & Canby
200-B Monroe Street
Rockville, MD 20850

Donna Ellen McBride
Miller, Miller & Canby
200-B Monroe Street
Rockville, MD 20850

Steven H. Greenfeld
Cohen Baldinger & Greenfeld, LLC
2600 Tower Oaks Blvd., Suite 290
Rockville, MD 20852

Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD  20770

All Creditors and Parties in Interest

**END OF ORDER**

EXHIBIT 2

FORM OF CONSENT ORDER

[ADVERSARY PROCEEDING]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

| | |
|---|---|
| In re: | ) |
| | ) |
| JOSHUA CARIN | )    Case No. 21-12418-MCR |
| | ) |
|     Debtor. | ) |
| _____ | ) |
| | ) |
| GEPPETTO CATERING COMPANY, INC., *et al.* | ) |
| | )    Adv. No. 21-00179 |
|     Plaintiffs, | ) |
| | ) |
|     v. | ) |
| | ) |
| JOSHUA CARIN, *et al*. | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

## <u>CONSENT ORDER APPROVING PARTIAL SETTLEMENT OF ADVERSARY PROCEEDING</u>

UPON CONSIDERATION of Defendants, Joshua Carin ("**Debtor**") and Moira Geronimo-Carin's ("**Moira Carin**") (collectively the "**Carins**") Motion to Approve Partial Settlement of Adversary Proceeding ("**Motion**");

IT APPEARING that the Debtor is a former officer, director, employee and stockholder of Plaintiff, Geppetto Catering Company, Inc. ("**Geppetto**"); and

IT FURTHER APPEARING that the Debtor was in charge of Geppetto's day-to-day business and affairs for more than 25 years prior to his voluntary resignation from all such positions on July 3, 2020; and

IT FURTHER APPEARING that contemporaneously with his resignation, Debtor relinquished all of his right, title and interest in and to Geppetto and surrendered his 30% interest therein to Plaintiff, Charles M. Lenkin ("**Lenkin**"); and

IT FURTHER APPEARING that Lenkin currently is the sole officer, director, shareholder and employee of Geppetto; and

IT FURTHER APPEARING that Debtor and Lenkin are parties to a certain Stockholder Agreement between Debtor, Lenkin and Geppetto dated January 20, 2004 ("**Stockholder Agreement**"); and

IT FURTHER APPEARING that the Stockholder Agreement contains a non-competition clause and a dispute resolution provision requiring Debtor and Lenkin to submit any disputes between them arising thereunder to binding arbitration; and

IT FURTHER APPEARING that in or about July 2020 disputes arose among Geppetto, Lenkin and the Debtor which culminated in Geppetto and Lenkin (collectively "**Plaintiffs**") filing an arbitration demand upon the Debtor on September 15, 2020, as amended December 22, 2020, before the American Arbitration Association, AAA Case No. 01-20-0014-8697, ("**Arbitration Claim**"); and

IT FURTHER APPEARING that the Arbitration Claim sought an award of damages against the Debtor, alleging that he breached the non-competition clause contained in the Stockholder Agreement; breached his fiduciary duty and duty of loyalty to Geppetto; and engaged in theft, conversion and fraud; and

IT FURTHER APPEARING that the Debtor filed an Answering Statement on September 30, 2020, and an Answer to Amended Claim on December 29, 2020, denying the allegations contained in the Arbitration Claim; and

IT FURTHER APPEARING that among other things, the Arbitration Claim alleged that the Debtor's breach of the Stockholder Agreement and other wrongful conduct arose out of, and

were related to, his contractual and employment relationships with, and other activities involving, the Montgomery County Revenue Authority and its CEO, Keith Miller; and

IT FURTHER APPEARING that on April 13, 2021, prior to completion of discovery in the arbitration proceedings, the Debtor filed a voluntary chapter 7 bankruptcy petition, Case No. 21-12418-MCR ("**Bankruptcy Case**") in this Court, thereby staying the Arbitration Claim; and

IT FURTHER APPEARING that among the scheduled assets of the Debtor's bankruptcy estate is a 30% membership interest in Queensbury, L.L.C. a Maryland limited liability company, titled in the name of the Debtor and his wife, and Moira Geronimo-Carin, as tenants by the entireties ("**Queensbury Membership Interest**"); and

IT FURTHER APPEARING that the Debtor valued the Queensbury Membership Interest at $300,000 in bankruptcy Schedule A/B: Property; and

IT FURTHER APPEARING that the Debtor claimed the Queensbury Membership Interest exempt from creditors in his bankruptcy Schedule C; and

IT FURTHER APPEARING that on August 18, 2021, Plaintiffs filed in the Bankruptcy Court a Complaint for (I) Determination of Non-Dischargeability of Debt; (II) Allowance of Claims and Other Relief Against Debtor, Montgomery County Revenue Authority, Keith Miller, Eric Goldberg and Moira Geronimo-Carin; and (III) Granting of Other Relief, Adv. Proc. No. 21-00179 ("**Adversary Proceeding**"); and

IT FURTHER APPEARING that in the Adversary Proceeding the Plaintiffs assert against the Debtor claims for breach of fiduciary duty and duty of loyalty, fraud, embezzlement, fraudulent misappropriation by a fiduciary, conversion and conspiracy to commit the foregoing torts; and

IT FURTHER APPEARING that the Adversary Proceeding further asserts against Moira Carin claims for civil conspiracy to commit fraud, aiding and abetting fraud, unjust enrichment,

3

conspiracy to convert Geppetto's property, and conspiracy to commit fraud and embezzlement; and

IT FURTHER APPEARING that the Carins dispute such claims; and

IT FURTHER APPEARING that the Adversary Proceeding also seeks an order determining that Plaintiffs' claims against Debtor are not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and/or (a)(6); and

IT FURTHER APPEARING that on September 3, 2021, Geppetto filed in the Bankruptcy Court a proof of claim docketed as Claim #7-1 asserting a general unsecured claim in the amount of $5,500,000 ("**Geppetto Proof of Claim**"); and

IT FURTHER APPEARING that on September 3, 2021, Lenkin filed in the Bankruptcy Court a proof of claim docketed as Claim #8-1 asserting a general unsecured claim in the amount of $5,500,000 ("**Lenkin Proof of Claim**"); and

IT FURTHER APPEARING that the Plaintiffs intend to consolidate the Geppetto Proof of Claim and the Lenkin Proof of Claim into one single proof of claim asserting a nonpriority general unsecured claim in the amount of $5,500,000; and

IT FURTHER APPEARING that in order to avoid the costs and risks associated with further litigation, the Carins and Plaintiffs desire to resolve all disputes between and among them arising prior to the date of the Agreement (defined below), including without limitation, the disputes alleged in, or relating to, the Arbitration Claim and the Adversary Proceeding; and

IT FURTHER APPEARING that on or about November 15, 2021, subject to Bankruptcy Court approval, the Carins and  Plaintiffs entered into the Settlement Agreement and Mutual Release ("**Agreement**"); and

4

IT FURTHER APPEARING that notice of the Agreement was provided to creditors and parties in interest, including the Office of the U.S. Trustee pursuant to Fed. R. Bankr. P. 9019, 2002, and 7041; and

IT FURTHER APPEARING that cause exists to approve the Agreement; it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED that the Agreement is approved; and it is further

ORDERED that, subject to the terms of the Agreement, the Plaintiffs have an allowed, single, joint, unsecured nonpriority claim in the amount of $5,500,000, which claim shall not be subject to setoff and shall be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6); and it is further

ORDERED that within five days of this order becoming a final order and the Carins satisfying their respective obligations pursuant to Section 3 and Section 4 of the Agreement without any Default as defined in the Agreement, the Plaintiffs will file a notice of voluntary dismissal of all counts of the Adversary Proceeding against Moira Carin; and it is further

ORDERED that the Carins and Plaintiffs are authorized to take all action necessary to effectuate the terms of the Agreement.

SEEN AND CONSENTED TO:

EISLER HAMILTON, LLC


By:   /s/       Alan D. Eisler
     Alan D. Eisler, Bar No. 11524
     1 Research Court, Suite 450
     Rockville, MD  20850
     Phone: (240) 283-1164
     Fax: (301) 519-8005
     Email: aeisler@e-hlegal.com
     Attorneys for Carins

5

COBURN & GREENBAUM, PLLC


By:   /s/  Jonathan W. Greenbaum
    Jonathan W. Greenbaum, Bar No. 24144
    1710 Rhode Island Avenue, N.W.
    Washington, D.C. 20036
    Phone: (202) 744-5003
    Fax: (866) 561-9712
    Email: jg@coburngreenbaum.com
    Attorneys for Geppetto and Lenkin

## CERTIFICATION OF CONSENT

I HEREBY CERTIFY that the terms of the copy of the consent order submitted to the court are identical to those set forth in the original consent order, and the signatures represented by the /s/ _____ on the copy of the consent order submitted to the court reference the signatures of the consenting parties obtained on the original consent order.

            /s/    Alan D. Eisler
            Alan D. Eisler

Copies to:

Alan D. Eisler
Eisler Hamilton, LLC
1 Research Court, Suite 450
Rockville, MD  20850

Jonathan Greenbaum
Coburn & Greenbaum, PLLC
1710 Rhode Island Avenue, N.W.
Washington, D.C. 20036

Lawrence A. Katz
Hirschler Fleischer, PC
8270 Greensboro Drive, Suite 700
Tysons, VA 22012

Matthew H. Johnson
Office of the County Attorney
101 Monroe Street, 3rd Floor
Rockville, MD 20850

Diane Elizabeth Feuerherd
Miller, Miller & Canby
200-B Monroe Street
Rockville, MD 20850

Donna Ellen McBride
Miller, Miller & Canby
200-B Monroe Street
Rockville, MD 20850

Steven H. Greenfeld
Cohen Baldinger & Greenfeld, LLC
2600 Tower Oaks Blvd., Suite 290
Rockville, MD 20852

Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD  20770

**END OF ORDER**

EXHIBIT 3

FORM OF QUEENSBURY ASSIGNMENT

[ATTACHED]

**SECOND AMENDMENT**
**TO**
**LIMITED LIABILITY COMPANY OPERATING AGREEMENT**
**OF**
**QUEENSBURY, L.L.C.**

THIS SECOND AMENDMENT TO LIMITED LIABILITY COMPANY OPERATING AGREEMENT OF QUEENSBURY, L.L.C. ("Amendment") is entered into and is fully effective as of _____, 2021, by and among Joshua Carin and Moira Carin, as tenants by the entireties, and Charles M. Lenkin and Renee Lenkin as tenants by the entireties, constituting all of the Members of Queensbury, L.L.C., a Maryland limited liability company ("Company").

**W I T N E S S E T H :**

**WHEREAS**, the Company was formed pursuant to Articles of Organization dated and filed with the Maryland State Department of Assessments and Taxation on August 3, 1999;

**WHEREAS**, the Company is constituted and governed by that certain Queensbury L.L.C. Operating Agreement dated August 11, 1999, as amended by that certain Queensbury L.L.C. Amendment to Operating Agreement dated July 18, 2014 (collectively, the "Operating Agreement");

**WHEREAS**, Joshua Carin and Moira Carin, as tenants by the entireties (sometimes hereinafter collectively referred to as the "Carins"), own a thirty percent (30%) Interest in the Company (the "Carins Interest"); and Charles M. Lenkin and Renee Lenkin, as tenants by the entireties (sometimes hereinafter collectively referred to as the "Lenkins") own the remaining seventy percent (70%) Interest in the Company;

**WHEREAS**, the Carins desire to assign, contribute, transfer and convey the Carins Interest and all related rights, powers and privileges under the Operating Agreement, to the Lenkins and the Lenkins desire to accept such assignment, contribution, transfer and conveyance;

**WHEREAS**, the Carins desire to withdraw from the Company; and

**WHEREAS**, the parties hereto desire to amend the Operating Agreement to reflect the above described assignment, transfer and withdrawal.

NOW, THEREFORE, for and in consideration of the premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows.

1

1.      **Assignment, Assumption and Transfer of Membership Interest**.

(a)      <u>Assignment and Assumption</u>.  Joshua Carin and Moira Carin hereby assign, contribute, transfer and convey the Carins Interest to Charles M. Lenkin and Renee Lenkin, as tenants by the entireties, together with any and all other rights, privileges, authority and powers of the Carins as owners or holders thereof to the Lenkins, to have and to hold the same unto the Lenkins and their respective heirs, successors and assigns, forever; and the Lenkins hereby accept the foregoing assignment, contribution, transfer and conveyance of the Carins Interest and assume all of the prospective rights, obligations, duties and liabilities attendant thereto, arising from and after the date of this Amendment, pursuant to and in accordance with the Operating Agreement, as amended hereby.

(b)      <u>Warranty of Title</u>.  Joshua Carin and Moira Carin hereby represent and warrant that they personally own title to the Carins Interest free and clear of any pledge or security interest or other encumbrance, lien or hypothecation, or any other third party claim, order or decree, and agree to indemnify the Lenkins and to defend such title against any and all adverse claims or demands of any third-party with respect to such title arising prior to the date of this Amendment.  The representation, warranty and indemnification made in this <u>Section 1(b)</u> shall survive execution and delivery of this Amendment.

(c)      <u>Cooperation</u>.  The Carins agree to promptly execute, acknowledge and deliver all such further acts, assignments, conveyances or assurances as from time to time may be reasonably requested in order to accomplish or substantiate the foregoing assignment and transfer of the Carins Interest hereby effected.

2.      **Withdrawal of Members**.  Effective as of the date of this Amendment, Joshua Carin and Moira Carin by their execution of this Amendment, hereby withdraw as Members of the Company.

3.      **Unanimous Consent of Members**.  By their execution hereof, the Carins and the Lenkins, constituting all of the Members of the Company, hereby unanimously consent to (i) the contribution, transfer, assignment and conveyance of the Carins Interest from the Carins as assignor to the Lenkins as assignee; and (ii) the withdrawal of the Carins as Members of the Company.

4.      **Amendment of Exhibit A of Operating Agreement**.  <u>Exhibit A</u> of the Operating Agreement is hereby deleted and <u>Exhibit A</u> attached to this Amendment is hereby substituted in lieu thereof.

5.      **Miscellaneous**.  Unless otherwise specifically defined herein, all capitalized terms used herein shall have the meanings ascribed thereto in the Operating Agreement, as amended hereby.  Each of the recitals contained herein forms a material part of this Amendment and is incorporated herein by this reference.  Except as amended in conformity with the terms of this Amendment, the Operating Agreement shall remain in full force and effect and unmodified,

and each of the parties hereto hereby ratifies and confirms the Operating Agreement, as amended hereby.

6.      **Counterparts**.  This Amendment may be executed in two or more facsimile or electronically executed counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment effective as of the date first hereinabove written.

**MEMBERS**:                                        **WITHDRAWING MEMBERS**:


_____                    _____
Charles M. Lenkin                              Joshua Carin


_____                    _____
Renee Lenkin                                   Moira Carin


_____
Joshua Carin


_____
Moira Carin

<u>CONSENT</u>

I, the undersigned Manager of Queensbury, L.L.C., hereby consent to all of the terms and conditions set forth in the foregoing Amendment.


_____
Charles M. Lenkin

3

Exhibit A
to Second Amendment of Operating Agreement of
Queensbury, L.L.C.


<u>Member Name and Address</u>                    <u>Membership Interest</u>

Charles M. Lenkin and Renee Lenkin              100%
as tenants by the entireties

18605 Bucklodge Road
Boyds, MD 20841