IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 21-12418-MCR |
| JOSHUA CARIN, | ) | |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | |

## MOTION (I) TO COMPEL DEBTOR TO SURRENDER AND TURNOVER PROPERTY OF THE ESTATE PURSUANT TO SECTIONS 521(a)(4) AND 542(a) OF THE BANKRUPTCY CODE (II) TO REQUIRE DEBTOR TO COOPERATE WITH AN INSPECTION OF HIS PROPERTY SO THE TRUSTEE CAN MAKE A FULL ACCOUNTING, AND (III) FOR THE COURT TO DETERMINE THE DEBTOR'S EXEMPTIONS

Steven Greenfeld, chapter 7 Trustee ("**Trustee**"), by undersigned special counsel, files this Motion to compel Joshua Carin ("**Debtor**") to surrender and turnover property of the estate to the Trustee pursuant to Sections 521(a)(4) and 542(a) of the Bankruptcy Code, to require Debtor to cooperate with an inspection of his property so the Trustee can make a full accounting of the Debtor's assets, and for the Court to determine the Debtor's exemptions, pursuant to Bankruptcy Rule 4003 (the "**Motion**").  In support of the Motion, the Trustee states as follows:

## I.    PRELIMINARY STATEMENT

This Motion is filed to compel the Debtor to do something he is already required to do in chapter 7:  surrender bankruptcy estate property to the Trustee.  More than two years after this bankruptcy case was filed, the Debtor continues to conceal, undervalue, and otherwise misrepresent his assets and financial affairs.  Because the Debtor repeatedly failed to adequately respond to discovery, the Trustee undertook a thorough investigation of the Debtor's businesses and assets by obtaining documents from third parties; and while the investigation is not entirely

complete, it has revealed multiple bank accounts and other valuable assets that the Debtor did not disclose even after he amended his schedules multiple times.  Further, the businesses, accounts, and other property the Debtor did schedule have been intentionally misdescribed, improperly exempted, or significantly undervalued, in an effort to deceive the Trustee into allowing the Debtor to keep them.  The total value of the Debtor's unscheduled or misreported property exceeds $1 million.

The Trustee, therefore, asks this Court to require the Debtor to immediately surrender his property, accounts, businesses, and records to the Trustee so he can liquidate the Debtor's assets and administer this bankruptcy estate.  Also, the Trustee asks this Court to require the Debtor to submit to an inspection of all locations of his personal property, so the Trustee can determine if all property has been disclosed and surrendered.  Finally, to the extent the Debtor has claimed the property as exempt, the Trustee asks this Court to determine the proper amount of the exemption, if any.

## II.    BACKGROUND

1.      On April 13, 2021 (**"Petition Date"**), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, and the Trustee was appointed.

2.      On the Petition Date, the Debtor filed his Schedules of Assets and Liabilities and Statement of Financial Affairs ("**Schedules**") listing $3,380,493.83 in total assets, but claiming all of the assets as exempt and designating the bankruptcy as a "no asset" case.  Dkt #1.

3.      After the initial Section 341 meeting, on June 30, 2021 the Trustee re-designated the chapter 7 bankruptcy as an Asset Case, left the meeting open, and notified creditors of the deadline to file a proof of claim.  Dkt ##33, 34.

2

4.      The Debtor has amended his Schedules seven (7) times, most recently on March 4, 2022.  Dkt ##13, 15, 26-27, 65-66, and 90.

5.      Meanwhile, on August 18, 2021, creditors Charles Lenkin ("**Lenkin**") and his business, Geppetto Catering Company, Inc. (together with Lenkin, "**Geppetto**"), filed a complaint to declare their fraud, theft, embezzlement and breach of fiduciary duty related claims against the Debtor non-dischargeable, pursuant to section 523(a) of the Bankruptcy Code. Adv. Case No. 21-00179 (the "**Non-dischargeability Action**").   On December 13, 2021, this Court approved a settlement of the Non-dischargeability Action which (a) allowed Geppetto a single, joint non-dischargeable claim of $5.5 million against the Debtor; (b) required the Debtor to pay Geppetto $500,000 from exempt assets; and (c) required the Debtor to assign to Lenkin the membership interest of the Debtor and the Debtor's spouse in Queensbury LLC (Carin's membership interest in Queensbury LLC being one of the bankruptcy estate's business interests). The settlement did not release any claims by the Trustee against the Debtor, his spouse, or any other party.  Dkt #68.

6.      In connection with the Non-dischargeability Action, on July 7, 2021 Geppetto conducted a Rule 2004 examination of the Debtor.  By Order of this Court (Dkt # 29) the Debtor was required to produce certain documents requested by the Trustee and Geppetto prior to the date of the examination.  The Debtor produced only a portion of the requested documents, and after the 2004 examination, he moved for a protective order (Dkt #44).  Ultimately, this Court approved a Consent Order which required the Debtor to produce an agreed-upon list of remaining documents (the "**Remaining Documents**") on or before September 17, 2021. (Dkt #63).  A list of the Remaining Documents was attached to the Consent Order, and is also attached to this Motion as **Exhibit A.**

7.    On March 27, 2022, this Court approved the Trustee's Application to Employ Hirschler Fleischer, PC as Special Counsel, to investigate the existence and location of estate assets which may not have been fully disclosed in the Debtor's schedules, and possible objections to the Debtor's claim of exemptions.  Dkt #92.[1]

8.    The Debtor did not comply with the Consent Order and did not produce the Remaining Documents.  Rather than making multiple follow up demands and engaging in more time consuming and administratively burdensome discovery disputes, the Trustee began to obtain the documents from banks, insurance carriers, and other third parties by subpoena. *See*, *e.g.*, Dkt ##106, 112, and 115.

9.    The Debtor's testimony at the Section 341 Meeting and 2004 Examination, the documents obtained by the Trustee from third parties by subpoena after the Debtor failed to comply with the above-referenced discovery orders, and the other documents and detail provided by Geppetto (collectively, the "**Available Documents**") has revealed a disturbing pattern of intentional concealment and material misrepresentation by the Debtor, as detailed in Section III below.

10.    On April 17, 2023, the Trustee sent a letter to Debtor's counsel outlining these issues and demanding the surrender and immediate turnover of these assets, but the Trustee received no response.  Therefore, the Trustee moves the Court to compel the Debtor to surrender his assets and properties to the Trustee; to compel the Debtor to submit to an inspection of his

---

[1]  Hirschler was also employed to investigate avoidance actions with respect to both pre-petition and post-petition transfers made by the Debtor, including transfers made to family members and related entities.  As a result of this investigation, on April 11, 2023 the Trustee filed Adversary Cases ## 23-00090 and 23-00091 to recover a total of approximately $400,000 in avoidable transfers.

properties; and to determine the Debtor's exemptions, to the extent that the Debtor claims an exemption in the property.

### III.    THE MISREPRESENTED AND CONCEALED ASSETS

#### A.    The Debtor's Businesses

11.    In the most recent version of his Schedules, the Debtor listed his business interests as follows:

| Name of Entity | % of Ownership | Value |
|---|---|---|
| Earth Friendly Maryland, LLC | 10 | $0 |
| Old Smokey Bar-B-Que, LLC | 100 | $5,000 |
| Carin and Company, LLC | 50 | $0 |
| Catering Consulting, LLC | 50 | $0 |
| 33 Canal Landing, LLC | 33 | $200,000 |

Dkt #66, Schedule B-19 (collectively, the "**Debtor's Businesses**").  Other than 33 Canal Landing, LLC, the Debtor did not claim any of the business interests as exempt.

12.    The Schedules misrepresent each of the Debtor's Businesses.  After reviewing the relevant Available Documents, the Trustee has determined:

- Earth Friendly Maryland, LLC d/b/a Earth Friendly Hospitality is an active operating business which the Trustee can sell as a going concern or in an orderly liquidation, and the Debtor's ownership interest is at least 50%, not 10%.

- Old Smokey Bar-B-Que, LLC also appears to be an active operating business which the Trustee can sell as a going concern or in an orderly liquidation, for significantly more than $5,000.

- Carin and Company, LLC had open bank account balances on the Petition Date; no debt; ownership of the internet domain registration that is being used for Old Smokey's website; and the Debtor's ownership interest is 100%, not 50%.

- Catering Consulting, LLC also had open bank account balances on the Petition Date; no debt; and the Debtor's ownership interest is 100%, not 50%

- 33 Canal Landing, LLC is partially owned by the Debtor and his spouse with two other married couples, and the Debtor's $1/6^{th}$ interest is a non-exempt asset.

13.    It is critical that the Trustee secure immediate control of the Debtor's Businesses, and their books and records, so he can sell the assets for maximum value.  Although the Debtor's membership interest in each LLC may be subject to some dispute, it cannot be disputed that the Trustee has the obligation to liquidate each business for the benefit of creditors.  Therefore, the Debtor must be compelled to surrender his businesses to the Trustee, and allow the Court to determine the interest of the Debtor and his co-owners, if any, in the proceeds of sale.

    (i)    **Earth Friendly Maryland, LLC d/b/a Earth Friendly Hospitality ("Earth Friendly")**

14.    Earth Friendly is a Maryland limited liability company engaged in the sale of biodegradable disposable serviceware. Earth Friendly describes itself as having "the world's finest eco-friendly bamboo products, specializing in supplying the most innovative restaurants, hotels, caterers, and gourmet stores around the country." *See* https://earthfriendlyhospitality.com.

15.    Earth Friendly was formed in 2010, and its original owners were Lenkin (46%), the Debtor (46%), and Madeline Larkin (8%).  In 2011, Ms. Larkin withdrew from the business, sold her interest equally to the remaining members, and thus Lenkin and the Debtor each owned 50% of Earth Friendly.  In November 2016, Moira Carin (the Debtor's spouse) purchased Lenkin's 50% interest in Earth Friendly for $23,628, which is the approximate amount of income taxes Lenkin had paid on his pro rata share of Earth Friendly's income from 2010 through 2015.[2]

---

[2]  The means by which the Debtor embezzled from Geppetto the funds used by Carin's spouse to purchase Lenkin's 50% interest in Earth Friendly is discussed in the Non-dischargeablity Action, but is not necessarily relevant here.

16.     In his bankruptcy Schedules, the Debtor misrepresented his ownership interest in Earth Friendly as only 10%. The equity transfers described above establish that the Debtor owns 50% of Earth Friendly and his wife owns the remaining 50%, and as recently as May 9, 2020, he submitted a certification of ownership to TD Bank stating that he owns 50% of Earth Friendly.

17.     The value of the Debtor's ownership interest in Earth Friendly is also misrepresented in his Schedules as being zero. Available documents show that Earth Friendly has working capital (cash, accounts receivable, and inventory less its current liabilities) of at least $200,000; fixed assets, including an unencumbered GMC Yukon Denali XL SUV; gross profit of $52,337 in 2020 and $77,084 in 2021; and ongoing customer relationships. Moreover, Earth Friendly has paid over $14,000 in cash distributions to the Debtor post-petition, as well as cash distributions within the 2 years prior to the Petition Date totaling more than $9,000 that were not disclosed by the Debtor in his Schedules. Dkt #90, SOFA 5.

18.     Other evidence suggests that the Debtor owns 100% of Earth Friendly and the other operating Businesses, does not observe corporate formalities, regularly transfers funds between the Businesses without documenting the transfers as loans or equity contributions, uses Earth Friendly checking accounts to purchase equipment for Old Smokey and Carin and Company, and takes cash distributions without making respective pro rata distributions to other purported owners.

19.     The Trustee intends to sell Earth Friendly as a going concern, pursuant to sections 363(b) and 363(h) of the Bankruptcy Code, and have this Court determine the respective interests of the estate and co-owners in the proceeds of sale.

(ii)     **Old Smokey Bar-B-Que, LLC ("Old Smokey")**

20.     Old Smokey is a Maryland limited liability company formed by the Debtor in April 2017. Old Smokey is a catering business and barbecue food vendor that has regularly participated

in local farmers markets, such as the Kensington Farmers Market, the Bethesda Central Farmers Market and the Nova Central Farmers Market.

21.     The Debtor owns a 100% interest in Old Smokey.  Initially, the Debtor formed the business to secretly compete with and divert business opportunities from Geppetto, in violation of his employment and fiduciary obligations to Geppetto.

22.     The Debtor scheduled Old Smokey with a value of only $5,000 and testified at his Rule 2004 Examination that this estimate was based on the liquidation value of a BBQ smoker. The Trustee disagrees with this valuation, and believes that Old Smokey may still be operating an active business with other fixed assets, an active website, bank accounts, and cash flow.  In fact, the Debtor has used cash of Earth Friendly to purchase equipment for Old Smokey's business operations.

23.     The Trustee intends to sell Old Smokey as a going concern, or otherwise liquidate the assets of the business and distribute the proceeds of the sale to the bankruptcy estate. The Trustee also reserves the right, if appropriate, to put the business into chapter 7 bankruptcy and pursue insider transfers and other avoidance actions.

      (iii)        **Carin and Company, LLC ("Carin and Company")**

24.     Carin and Company holds itself out as a hospitality and "networking" consultant. Like Old Smokey, it was formed by the Debtor in April 2017, to secretly divert business opportunities from Geppetto.  For example, Carin and Company was engaged by the Montgomery County Revenue Authority ("**MCRA**") to help MCRA develop, launch and operate a startup catering business in direct competition with Geppetto.

25.     The Debtor owns a 100% interest in Carin and Company according to his tax returns and other Available Documents, but he misrepresented that interest as only 50% in his

Schedules. The Debtor has further misrepresented Carin and Company as having zero value on the Petition Date, when the entity owns assets, including the Old Smokey website domain (www.oldsmokeybbq.us) and two accounts at TD Bank (last four numbers 2780 and 9829) which as of the Petition Date had a total balance of more than $24,000. After the Petition Date, Carin and Company transferred at least $19,000 to a joint bank account owned by the Debtor and his wife without Court approval.

26.    The Trustee intends to liquidate Carin and Company's remaining assets, close and collect any amounts remaining in its bank accounts, and pursue funds improperly transferred by the Debtor from the LLC post-petition.

(iv)    **Catering Consulting, LLC ("Catering Consulting")**

27.    Catering Consulting is a Delaware limited liability that was formed by the Debtor in May, 2019 for the sole purpose of continuing to receive income from Geppetto, when his relationship with MCRA changed from being a 1099 "consultant" through Carin and Company to an individual salaried employee of MCRA. In an effort to circumvent the Montgomery County Public Ethics Law prohibitions against unauthorized contemporaneous public and private employment, in May, 2019 the Debtor unilaterally changed his status from serving as the COO of Geppetto, to a 1099 "consultant," paying himself the same executive level compensation from Geppetto to Catering Consulting.

28.    In his Schedules, the Debtor misrepresented his ownership interest in Catering Consulting as 50%. Available Documents, including the Catering Consulting operating agreement and its K-1s list the Debtor as owning 90%, with his wife Moira owning the remaining 10%. In reality, Debtor has 100% ownership and control of the business as his alter ego. For example, the operating agreement requires that any distributions of the LLC's Distributable Cash shall be made

pro-rata to its members in accordance with their respective membership interests, but the LLC never observed that requirement. Since the date of formation of the LLC in 2019 through 2020, the Debtor made all of the distributions from Catering Consulting to himself.

29. On the Petition Date, Catering Consulting had two bank accounts at TD Bank, a checking account (Last Four #9475) and a separate checking account used solely for the deposit and distribution of PPP loan proceeds to the Debtor (Last Four #7042). On the Petition Date, Catering Consulting's bank accounts each held small balances, totaling $4,094. The Debtor misrepresented the value of Catering Consulting in his Schedules as zero. After the Petition Date, on October 20, 2021, the Debtor withdrew all of the funds and closed these two bank accounts, without court approval. Other Available Documents received by the Trustee indicates that Catering Consulting may have had other bank accounts outside of TD Bank.

30. Prior to the Petition Date, from January 2020 through March 2020, Catering Consulting distributed a total of $51,000 to the Debtor. In April 2020, Catering Consulting applied for a loan from the Cares Act Paycheck Protection Program in the amount of $27,752 (the **"PPP Loan"**) calculated as $11,101 of payroll x 2.5, even though during the applicable time period Carin was paying himself executive level compensation from Geppetto through Catering Consulting, while contemporaneously receiving an annual salary of more than $150,000 plus bonuses from the MCRA. On May 3, 2020, Catering Consulting received the proceeds of the PPP Loan; and on March 26, 2021 (just a few weeks prior to the Petition Date), the PPP Loan was forgiven. Thus, the Debtor received at least $78,752 of income from Catering Consulting in 2020-2021, which he did not report in his Schedules. *See* SOFA ##4-5.[3]

---

[3] In May 2020, when Geppetto no longer had sufficient funds for Carin to continue to pay himself through the LLC, Carin unilaterally converted himself back to a Geppetto W-2 employee so that he could collect 8 paychecks from Geppetto's PPP loan proceeds. At the same time, the Debtor also received PPP loan proceeds for Earth Friendly ($6,427) and Old Smokey ($15,000). The Earth

31.     The Trustee demands turnover of the Catering Consulting funds the Debtor took from the TD Bank accounts post-petition, turnover of information and funds in any other bank accounts of the business, and reserves the right to put Catering Consulting into bankruptcy and pursue its fraudulent conveyances.

**(v)     33 Canal Landing, LLC ("Canal Landing")**

32.     Canal Landing is a Delaware limited liability company, which owns a condominium located at 66 Canal Landing Court in Rehoboth Beach, Delaware (the "**Condominium**"). The Debtor, his wife, and two other married couples share the Condominium as a vacation home.

33.     The value of the Condominium is approximately $669,000. The Debtor scheduled a 33% interest in Canal Landing, valued that interest in the amount of $200,000, and listed it as exempt tenants by the entireties property.  The Trustee has reviewed Available Documents, including the LLC operating agreement, the deed to the Condominium, and the prior deed transfers; and objects to the Debtor's exemption because the Condominium is owned by the LLC, not by the Debtor.

34.     The Debtor and Moira Carin acquired the Condominium on November 18, 2004, and recorded the deed as being owned as husband and wife. On June 15, 2015, the Debtor and Moira Carin transferred the Condominium to (1) themselves, husband and wife, (2) Glenn Lewis Sandler and Stella Papanastasiou, husband and wife, and (3) Craig Paul Colliver and Virginia

---

Friendly PPP Loan was forgiven prior to the Petition Date, but the Old Smokey PPP Loan was not, and the Debtor repaid Old Smokey's $15,000 PPP loan immediately prior to filing for bankruptcy. The Debtor did not disclose the Earth Friendly income or his repayment of the Old Smokey PPP loan in his Schedules.

Carangal Colliver, husband and wife, each as tenants by the entireties, with each couple owning a 1/3 undivided interest in the Condominium.

35.    Immediately thereafter, on June 15, 2015, the three couples, each owning a 1/3 undivided interest in the Condominium, executed a deed transferring ownership of the Condominium to Canal Landing without preserving their respective tenancy by the entireties interests in the real estate.    Section VI.A of the 33 Canal Landing LLC Operating Agreement  provides that any member may sell its membership interest to the remaining members at a purchase price equal to the fair market value of such membership interest as determined by a qualified appraiser; and that if the remaining members do not elect to purchase such membership interest, the Condominium shall be sold.

36.    The Trustee objects to the Debtor's exemption of Canal Landing and intends to sell the Debtor's membership interest, in accordance with the terms of the LLC operating agreement.

**B.    The Debtor's Bank Accounts**

37.    In the most recent version of his Schedules, the Debtor listed the following bank accounts:

| Institution Name | Type of Account | Balance |
|---|---|---|
| Navy Federal Credit Union | Checking | $3,000 |
| Navy Federal Credit Union | Savings | $0 |
| Edward Jones | Investment | $45,000 |
| T. Rowe Price | Son's 529 | $55,225 |
| T. Rowe Price | Daughter's 529 | $41,779 |

Dkt #66, Schedule B-17, 18, and 24.  The Debtor scheduled all of these bank accounts as exempt. The Debtor also owned on the Petition Date a number of bank accounts that he did not disclose in his Schedules, as set forth below.[4]

38.    The Debtor did not schedule and attempted to conceal a checking account at TD Bank that he owns with his wife (account number last four #5570).  As of the Petition Date, this account had a balance of at least $5,950, and the Debtor continued to spend money from the account after the Petition Date without bankruptcy court approval.

39.    The Debtor did not schedule and attempted to conceal an investment account at Edward Jones that he owns with his wife as joint tenants with the right of survivorship (account number last four #6913).  As of the Petition Date, this account had a balance of at least $14,695, and the Debtor continued to spend money from the account, including the purchase of a 2009 Ford Envoy, after the Petition Date without bankruptcy court approval.

40.    The Debtor scheduled the Edward Jones investment account with a balance of $45,000 (account number last four #6912), as exempt under 11 U.S.C. § 522(b)(3)(B).  This account, however, is described in the Debtor's bank statements as being owned with Moira Carin as joint tenants with the right of survivorship, not as tenants by the entireties.  Therefore, the exemption is improper.  After the Petition Date, the Debtor transferred $45,000 from this investment account to another jointly-owned investment account at Edward Jones (account number last four #5218), and used the funds to purchase public securities.

41.    The Debtor also listed an investment account at Edward Jones under his control (account number last four #3315), but scheduled the account as being owned by his daughter,

---

[4]  This does not include the Bank of America account and the Navy Federal share certificate account, which are the subject of adversary proceedings filed in this bankruptcy case, as mentioned above in footnote 1.

Rebecca Carin. Dkt #90, SOFA 23.  That is not a correct description of the account.  This bank account is owned by the Debtor and his adult daughter in joint tenancy, and the account had a balance of at least $17,112 as of the Petition Date.

42.     The Debtor scheduled the 529 accounts as exempt under 11 U.S.C. § 541(a)(6), which is not a proper exemption.  Section 541(b)(6) of the Bankruptcy Code provides that funds transferred to a 529 account within one year prior to the bankruptcy, as well as funds in excess of $6,825[5] transferred to a 529 account between one and two years prior to the bankruptcy, constitute property of the estate.  The Debtor transferred $3,500 to the 529 accounts in the year prior to the Petition Date, and $7,000 between one and two years prior to the Petition Date.

43.     The Trustee, therefore, requests that this Court require the Debtor to turnover a total of $55,376 on account of the undisclosed, incorrectly scheduled, and improperly exempted Bank Accounts, which includes $20,645 from the undisclosed accounts; $31,056 or one-half of the joint accounts; and $3,675 from the 529 accounts.

**C.     Retirement Accounts**

44.     In the most recent version of his Schedules, the Debtor listed the following retirement accounts:

| Institution Name | Type of Account | Balance |
|---|---|---|
| Edward Jones | IRA | $427,613.50 |
| Montgomery County, Maryland | 403(b) | $25,624.81 |

Dkt #66, Schedule B-21. The Debtor scheduled these accounts as exempt under Maryland Code § 11-504(h).  This raises a number of questions that the Debtor has not answered in discovery.

---

[5]  This was the limit in 2021 when the Debtor filed bankruptcy.

45.     Maryland Code § 11-504(h)(4) provides that an IRA contribution is not exempt to the extent it exceeds the maximum contribution allowed under the Internal Revenue Code.  The Debtor's IRA account at Edward Jones (account no. last four #0115) increased from approximately $60,000 to over $400,000 within the one year prior to the Petition Date.  It is possible that this was a rollover from another account, but the Debtor has not provided this information to the Trustee.

46.     The Debtor also owns a Roth IRA at Edward Jones (account no. last four #1219) with a balance of approximately $7,000 on the Petition Date.  It is not clear whether this account was undisclosed in the Debtor's schedules, or if the Debtor combined it with his traditional IRA account in Schedule B-21.

47.     The Debtor scheduled a 403(b) account with Montgomery County.  A 403(b) is a retirement plan for employees of public schools and tax exempt non-profit organizations.  The Debtor's paystubs indicate that he participated in a 401(a) employer-sponsored retirement plan with Montgomery County.  It is not clear whether the Debtor failed to schedule a separate 401(a) account, or if he mistakenly identified his 401(a) account as a 403(b) account.

48.     Finally, and most troublesome, the Debtor did not disclose in his Schedules a Simplified Employee Pension (SEP) account at Edward Jones (account no. last four #4915), which had a balance of approximately $32,500 on the Petition Date.[6]  In August 2022, several months after the Debtor made the final amendment to his bankruptcy Schedules, he transferred over $29,000 from the SEP, leaving only $19.25 in the account.

---

[6] The SEP account (titled as being held by Earth Friendly FBO Joshua Carin) was initially funded by a $25,455 contribution from Earth Friendly on July 9, 2020, which is the same day that the Debtor was threatened with a legal action by Geppetto.  The original source of the Earth Friendly contribution appears to be either a draw from a line of credit or a transfer from Carin and Company.

49.    The Trustee has asked for a full accounting of the IRAs, 403(b), 401(a), and SEP accounts (collectively, the "**Retirement Accounts**"), but the Debtor has not responded.  The Trustee, therefore, objects to the Debtor's exemption of his Retirement Accounts, demands turnover of funds in the SEP Account as of the Petition Date, requests that the Court compel the Debtor to turn over all records relating to the Retirement Accounts within twenty (20) days, and schedule a hearing to determine the proper amount of his exemption, if any.

### D.    Other Misreported Property

50.    Other than the Businesses, the Bank Accounts and the Retirement Accounts, the Debtor owns various other personal property that he has either not disclosed, undervalued, or improperly exempted (described below, and collectively referred to as the "**Misreported Property**").  The Trustee strongly suspects that this is not a full and complete list of other Misreported Property, because he continues to find more undisclosed assets as his investigation continues.

51.    The Assigned Pictures and Paintings.  Geppetto has assigned its ownership interest in 9 photographic artwork pieces by various artists and 7 paintings by various artists (collectively, (the "**Assigned Pictures and Paintings**") which are in the Debtor's possession, to the Trustee.  These Assigned Pictures and Paintings were purchased by the Debtor with funds that he embezzled from Geppetto.  The Debtor has acknowledged in his Schedules (SOFA #23) that these 16 Assigned Pictures and Paintings are owned by Geppetto, but has not turned them over to Geppetto or the Trustee.

52.    The Other Paintings.  The Debtor also scheduled and exempted five additional paintings (the "**Other Paintings**") at a total value of $5,000.  Schedule B #6.  The actual value of four of these Other Paintings is at least $25,550 based on the original purchase price and the insured

values listed in the Debtor's homeowners insurance policy.  Available Documents show that the Debtor purchased two of these Other Paintings from a gallery at a private art sale for $12,773, two others are of equal value, and the value of the fifth painting is unknown.

53.     The Undisclosed Artwork.  In addition to the Assigned Pictures and Paintings, and Other Paintings, the Trustee is aware of at least 22 other pieces of artwork (the "**Undisclosed Artwork**") owned by the Debtor but not listed on his Schedules, based on purchase records.  This may or may not include pictures, paintings and other artwork located at the Condominium in Rehoboth Beach, Delaware which the Debtor expressly excluded from the deed transfers described in Section III.A(v) of this Motion.

54.     The Antique Furniture.  Geppetto has assigned its ownership interest in custom reproduction antique furniture (the **"Antique Furniture"**), which is in the Debtor's possession, to the Trustee.  This includes a farm table, side table, and stand purchased by the Debtor with funds that he embezzled from Geppetto.  The Debtor has acknowledged in his Schedules (SOFA #23) that the Antique Furniture is owned by Geppetto, but has not turned it over to Geppetto or the Trustee.

55.     The Mantel Clock.  The Debtor did not schedule his ownership of a French-Style Vintage Mantel Clock (the "**Mantel Clock**").  It has a value of up to $30,000.

56.     Jewelry.  The Debtor scheduled as "collectibles" and exempted a wedding ring, cufflinks, and necklace at a total value of $600 (the "**Jewelry**").  Schedule B #8.  The actual value of the Debtor's Jewelry is at least $59,167 based on the original purchase price and the insured values listed in the Debtor's homeowners policy.  In fact, the Debtor executed a financial statement in August 2018 which valued his artwork, jewelry, and furnishings at $330,000.

57.    <u>Miscellaneous Assets</u>.  At the time the Debtor filed for bankruptcy, he was renting a two-story house at 4202 Queensbury Road.  It was used to store some of his catering equipment, office supplies, furniture, computer equipment and alcoholic/non-alcoholic beverages, which the Debtor did not disclose in his Schedules.  The Debtor also did not schedule his unexpired lease of the house, and the Trustee has learned that in August 2021, the landlord auctioned the personal property that had been concealed by the Debtor and not listed on his Schedules.  The Trustee also learned that the Debtor has retained in his possession and control personal property in other locations that he did not disclose on his Schedules, such as farm equipment, commercial catering equipment, oriental rugs, a pool table, tools, and exercise equipment.  The Trustee, therefore, demands physical inspections at the Debtor's home as well as any other location where the Debtor has personal property (the "**Miscellaneous Assets**"), so that the Trustee can put together a full inventory, assemble the Miscellaneous Assets, and arrange for an auction.

58.    <u>The Horse Trailer</u>.  The Debtor scheduled a 2011 Cimarron Horse Trailer (the "**Horse Trailer**") in the amount of $8,000 which the Trustee sold in November 2022 with Court approval for $14,000. The Trustee has not been able to close the sale, however, because the Debtor has refused to provide the current certificate of title for the Horse Trailer.  Truist Bank (formerly BB&T) previously held a lien on the title, released its lien in November 2013 when the lien was paid in full, and has produced correspondence showing that it mailed the unencumbered title to the Debtor.  In response to the Trustee's demand for the certificate of title, the Debtor sent the Trustee a copy of the previous title showing BB&T with a lien on the Horse Trailer, and has refused to send the Trustee the current certificate showing the unencumbered title.

59.    <u>The Dump Trailer</u>.  The Debtor scheduled a 2014 Pequeay Dump Trailer (the "**Dump Trailer**") in the amount of $7,000, and claimed a $5,000 wildcard exemption, in which

case, upon sale, there would be a very small amount of remaining equity.  The Trustee, however, can sell the Dump Trailer for significantly more than $7,000 and therefore requests the original title document and access to the trailer which is a registered motor vehicle.

60.     The Trustee, therefore, requests that the Court compel the Debtor to properly account for and turnover the current certificate of title for the Horse Trailer and the Dump Trailer, and surrender the Assigned Pictures and Paintings, the Other Paintings, the Undisclosed Artwork, the Antique Furniture, the Mantel Clock, the Jewelry, and the Miscellaneous Assets described above, and other assets which may be uncovered later in the inspection and upon any further investigation.  The Trustee intends to liquidate all of this Misreported Property, reserve $11,000 on account of the Debtor's wildcard exemption claims, and retain all proceeds in excess of the Debtor's exemptions for the benefit of the bankruptcy estate.

## IV.     LEGAL BASIS FOR THE RELIEF REQUESTED

61.     The Debtor's duties are listed in Section 521 of the Bankruptcy Code.  Among them are to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title" and to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate…" 11 U.S.C. §§ 521(a)(3), (4).

62.     In addition, Section 542 of the Bankruptcy Code provides, in pertinent part, that "an entity … in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property…." 11 U.S.C. § 542(a).

63.     The Trustee's duties are listed in Section 704 of the Bankruptcy Code.  Among them are to "investigate the financial affairs of the debtor" and to "collect and reduce to money the

property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. §§ 704(a)(1), (4).

64.     In this case, the Debtor has not properly accounted for his property, did not produce documents required by Court Order, and did not honestly respond to questions at the 341 meeting and Rule 2004 examination. This lack of disclosure required the Trustee to engage special counsel and to commence a thorough investigation of the Debtor's assets and financial affairs.  The Misrepresented and Concealed Assets described in Section III of this Motion constitutes the current result of that investigation, and the Trustee continues to pursue other potential concealed and misrepresented assets.

65.     Honesty, disclosure, cooperation and transparency are fundamental to the bankruptcy process.  "It is well settled that a [trustee] should not be required to drag information from a reluctant and uncooperative debtor.  Because of the extraordinary relief offered under the Bankruptcy Code delay and avoidance tactics are inconsistent with, and offensive to, its purpose and spirit." *In re Weiss*, 132 B.R. 588, 593 (Bankr. E.D. Ark. 1991), *citing In re Tully*, 818 F.2d 106 (1st Cir. 1987).

66.     Furthermore, a chapter 7 debtor has an affirmative duty to cooperate with the trustee in the administration of the bankruptcy estate.  11 U.S.C. § 521(a)(3).  This duty to cooperate is "based upon one of the very simple goals of any chapter 7 case – to maximize the return to creditors . . . [w]here a debtor fails to cooperate with the case trustee, the trustee is then forced to expend estate resources in pursuing the debtor's cooperation, which results in the reduction of the distribution to creditors." *In re Stinson*, 269 B.R. 172, 176 (Bankr. D. Ohio 2001).  The debtor's cooperation with the trustee, specifically as provided in Section 521 is "essential to the effective

and efficient administration of the estate." *In re Byrd*, 2007 Bankr. LEXIS 10 at *10 (Bankr. D. Md. 2007).

67.    Under Section 521(a)(4) of the Bankruptcy Code, the debtor owes a duty to surrender to the trustee all property of the estate. 11 U.S.C. §521(a)(4); *Turshen v. Chapman*, 823 F.2d 836, 839 (4th Cir. 1987). Property of the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case," and "all interests in the debtor and debtor's spouse in community property as of the commencement of the case that is under sole, equal, or joint management and control of the debtor." 11 U.S.C. §§ 541(a)(1), (2). Additionally, property that the trustee may sell under Section 363, or that may be exempted by the Debtor under Section 522, must be delivered to the trustee. 11 U.S.C. § 542(a).

68.    In this case, surrender and cooperation requires not only the turnover of property, but also allowing the Trustee full access to all of the places where the Debtor's personal property and business property are located. The Trustee needs to make a full accounting and inventory of the Debtor's assets and the Business assets, before he can determine which property to auction, and which property to liquidate by private sale.

69.    Federal Rule of Civil Procedure 34(a)(2), which is incorporated into this contested matter pursuant to Bankruptcy Rule 9014(c), provides that a party can request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." A formal process to inventory the property is required because, among other reasons, the Debtor has repeatedly concealed and misreported his assets. This request for an inspection of property can be satisfied prior to the initial hearing on this Motion, if the Debtor would immediately provide the Trustee a list of all the addresses where his personal

and business property is located, and access to these locations as the Bankruptcy Code requires under sections 521(a)(3) and (4) of the Bankruptcy Code.

70.     Finally, the Debtor has been on notice of the Trustee's investigation findings and ignored the Trustee's previous turnover demand, so the Trustee submits that (a) turnover should be made immediately after entry of the order, (b) the physical inspections occur within thirty (30) days from entry of the order, and (c) an initial report be filed by the Trustee with the Court regarding the results of the turnover and inspections within sixty (60) days.

71.     The extent of the Debtor's dishonesty in this case is shocking and outrageous, and has cost the estate significant time, effort, and expense to uncover it.  A consumer debtor may be sanctioned for failing to cooperate with the trustee, for refusing to turn over property and records, and for deceitful conduct. *See, e.g. In re Stinson*, 269 B.R. 172 (Bankr. S.D. Ohio 2001); *In re Paige*, 365 B.R. 632 (Bankr. N.D. Tex. 2007). Indeed, intentional fraud and concealment of estate property, making a false oath or account, and withholding of books and records relating to the debtor's financial affairs are bankruptcy crimes, subject to fines and/or imprisonment. 18 U.S.C. § 152.

72.     The Trustee is not asking for sanctions against the Debtor at this time, and the U.S. Trustee's Office and Department of Justice can decide whether to pursue the Debtor criminally. Rather, by this motion, the Trustee makes a simple and formal demand of the Debtor to surrender his assets, accounts, and business records, under the supervision of this Court.  Consistent with this demand, the Trustee asks this Court to enter the proposed order attached hereto as **<u>Exhibit B</u>** (the "**<u>Order</u>**"), which details the methods of turnover and ongoing cooperation from the Debtor necessary for this estate to be properly administered, and a process for the Trustee to report back to the Court regarding the Debtor's compliance with the order, the results of asset liquidation, and

to determine the potential interests of co-owners and the proper amount of the Debtor's exemptions.

73.     The Trustee objects to the Debtor's claim of exemptions pursuant to Bankruptcy Rule 4003(b).  The exemptions cannot be determined at this time because the assets are not properly disclosed, surrendered, and inventoried.  Moreover, the Debtor does not have the right to exempt certain property recovered by the Trustee if he tried to conceal it.  11 U.S.C. § 522(g)(1)(B).  Given the misreporting of assets and lack of cooperation, which has allowed the Debtor to engage in post-petition misconduct and dissipate the assets, the most equitable and efficient way to administer this estate is for the Trustee to take immediate control, liquidate all of the assets, and for the Court to determine the proper amount of the Debtor's exemptions after the pool of funds is created.

74.     The Trustee has the obligation under Section 704(a)(1) of the Bankruptcy Code to "collect and reduce to money" all property of the bankruptcy estate, including property subject to exemption and co-ownership's claims.  Section 363(h) of the Bankruptcy Code allows the Trustee to sell "both the estate's interest . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety . . ." 11 U.S.C. § 363(h).  After a sale of such property pursuant to Section 363(h), the Trustee will distribute the proceeds of such sale, less costs and expenses, according to the interests of the estate, spouse, or co-owners, as determined by the Bankruptcy Court. 11 U.S.C. § 363(j).

75.     The sale of an undivided interest in the Debtor's assets would generate more for the estate without causing significant detriment because the co-owners, if any, will receive their interest from the proceeds of sale.  It is "generally accepted that the sale of a bankruptcy estate's

undivided interest will generate substantially less than the sale of the property free of each owner's interest because of the chilling effect that the sale of the undivided interest usually has on prospective purchasers. . . ." *In re Al-Idrisi*, 634 B.R. 174, 183 (Bankr. Ma. 2021) *quoting In re Ziegler*, 396 B.R. 1, 4 (Bankr. N.D. Ohio 2008).

76.     Moreover, it is impracticable, if not impossible to make an "in-kind" division of the Debtor's Businesses and other assets subject to a co-ownership claim, prior to the sale.  Indeed, the Bankruptcy Code requires property that may be co-owned -- even as a tenant by the entirety -- to be turned over to, and sold by, the trustee.  *See* 11 U.S.C. § 363(h) (trustee may sell the estate's interest and the interest of a co-owner in property, including tenant by the entirety).

77.     The same concept and principle applies to the assets the Debtor claims as exempt, which he has repeatedly misreported during this case.  The Trustee should be authorized to sell the Debtor's property subject to an exemption claim, with the amount of such claim to be determined from the proceeds of sale.  *See* 11 U.S.C. § 542(a) (turnover includes property that the debtor may exempt).

WHEREFORE, for the Trustee respectfully requests that this Court enter the Order attached as **Exhibit B**, and that the Court continue to monitor this case with Status Reports from the Trustee, and hearings as necessary to enforce the Debtor's compliance.

Date:  June 20, 2023                  Respectfully submitted,

*/s/ David I. Swan*
Lawrence A. Katz (Md. Federal Bar No. 02526)
David I. Swan (Md. Federal Bar No. 28785)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone:  703.584.8900
Facsimile:  703.584.8901
Email:  lkatz@hirschlerlaw.com
          dswan@hirschlerlaw.com

*Special Counsel to Steven Greenfeld,*
 *Chapter 7 Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2023, (i) I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing *Motion (I) to Compel Debtor to Surrender and Turnover Property of the Estate, Pursuant to Sections 521(a)(4) and 542(a) of the Bankruptcy Code, (II) to Require Debtor to Cooperate with an Inspection of His Property so the Trustee can Make a Full Accounting, and (III) For the Court to Determine the Debtor's Exemptions* will be served electronically by the Court's CM/ECF system on the attorneys listed on Attachment 1 (ECF List) and (ii) and by first-class, postage prepaid, upon the parties identified on Attachment 2 (First Class Mail List).



*/s/ David I. Swan*
David I. Swan

<u>**ATTACHMENT 1**</u>

**ECF Service List**

- **Elizabeth Marian Abood-Carroll**     ANHSOrlans@InfoEx.com, ecfaccount@orlans.com
- **Richard L. Costella**     rcostella@tydings.com, jmurphy@tydings.com
- **Alan D. Eisler**     aeisler@e-hlegal.com, mcghamilton@gmail.com
- **Diane Elizabeth Feuerherd**     DEFeuerherd@mmcanby.com
- **Jonathan W. Greenbaum**     jg@coburngreenbaum.com
- **Steven H. Greenfeld**     trusteegreen@cohenbaldinger.com, sgreenfeld@ecf.axosfs.com
- **Steven H. Greenfeld**     steveng@cohenbaldinger.com
- **Matthew H. Johnson**     Matthew.Johnson3@montgomerycountymd.gov, theresa.hampl@montgomerycountymd.gov;gessesse.teferi@montgomerycountymd.gov;patricia.kane@montgomerycountymd.gov
- **Donna Ellen McBride**     dmcbride@mmcanby.com

## ATTACHMENT 2

### First Class Mail Service List

Amex
PO Box 1270
Newark, NJ 07101-1270

Dusan and Dana Stamenkovic
8109 Postoak Road
Potomac, MD 20854

Earth Friendly Market, LLC
17523 Moore Road
Boyds, MD 20841

Comptroller of Maryland
Bankruptcy Unit
301 W. Preston Street, Room 409
Baltimore, MD 21201

Eric Goldberg
9510 Persimmon Tree Road
Potomac, MD 20854

Farm Credit
925 N. East Street
Frederick, MD 21701-4600

Gessee Teferi
Associate County Attorney
101 Monroe Street
Rockville, MD 20850

Great and Small Therapeutic Riding
17320 Moore Road
Boyds, MD 20841

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

John Deere Financial
PO Box 4450
Carol Stream, IL 6017-4450

Keith Miller
101 Monroe Street, Suite 410
Rockville, MD 20850

Maryland Economic Development Corp.
c/o Capstone On-Campus Mgmt. LLC
4250 Lehigh Road, Suite 1101
College Park, MD 20740

Moira Carin
17523 Moore Road
Boyds, MD 20841

Montgomery County Revenue Authority
101 Monroe Street, Suite 410
Rockville, MD 20850

State of Maryland DLLR
Division of Unemployment Insurance
1100 N. Eutaw Street, Room 401
Baltimore, MD 21201-2226

Navy Federal Credit Union
PO Box 3000
Merrifield, VA 221193000

NFCU Visa
PO Box 3500
Merrifield, VA 22119-3500

Patricia Lisehora Kane
Chief Litigation Division
101 Monroe Street, 3rd Floor
Rockville, MD 20850

Rebecca Carin
17523 Moore Road
Boyds, MD 20841

Stephanie Tsacoumis
Pebble Beach Associates, LLC
720 Pebble Beach Drive
Silver Spring, MD 20904

SunTrust
PO Box 791274
Baltimore, MD 2129-1274

SunTrust Bank now Truist Bank
Attn:  Support Services
PO Box 85092
Richmond, VA 23285-5092

TD BankNorth NA
70 Gray Road
Falmouth, ME 04105-2299

Taxing Authority of Montgomery County
Division of Treasury
255 Rockville Pike, Ste. L-15
Rockville, MD 20850